Case number 18-3063, United States of America v. Matthew West, also known as Clyde S. Jacob Ford, for the imbalance. Ms. Wright, for the imbalance. Mr. Hansberg, for the appellee. Good morning, counsel. Ms. Wright, please proceed when you're ready. Good morning. I support Lisa Wright v. Mr. West. I'd like to reserve three minutes for rebuttal. The parties disagree about just about everything in this case, and fundamentally we don't even agree about how to frame the various disputes, who needs to decide what, when. So if I could, I'd like to step back and get out of the weeds and propose that the court can correct Mr. West's unconstitutional lack of sentence without having to reach most of the questions that have been briefed here. We see the decision framework as a three-step, simple process. Have we passed EDPA's hurdles, procedural hurdles? Have we made out a Johnson error on the merits, and is the error harmless? And the government's framework, we say, wrongly jumbles and conflates those questions and puts them all into the EDPA procedural analysis. Unfortunately, the case law and the other circuits on these questions is all over the place. So our view of procedural questions relies on the plain text of 2255 and 2254, and obviously we like our reading of that, but to prevail, and we also think we're right about the merits burden question. But the court doesn't have to reach those questions because even assuming the court is correct, that the government is correct, that to get past EDPA, Mr. West has to show not just that he has not just a Johnson claim, but a winning Johnson claim. And even if it's correct, but to determine that, Mr. West has to show by reconderance that he was sentenced. He has met that reconderance burden, and that's the easy way to decide this case. So put most simply, Mr. West's sentence must be reversed because he can show that, one, it's more likely than not that he was sentenced under the unconstitutional residual clause, and that's for one of two reasons, which I can get to. And two, the Johnson error was harmless because West does not qualify under any other clause. And we say that Borden answers both of these questions because it makes clear that a crime like New Jersey aggravated assault that can be satisfied with a reckless sentence rate does not require force against another. The government intends Borden's inapplicable because of the circumstances under which the reckless conduct occurs under the New Jersey aggravated assault. But it fails to grasp the import of Borden just as it failed to grasp the import of Leachow in Borden when it argued Borden. And I'd like to talk about the 28J letter, I think illuminates the issue here. So the New Jersey statute we know says that it can be satisfied if a person recklessly causes serious or significant injury under circumstances manifesting extreme indifference to human life. And the Brasby case, the government cites in the 28J letter, first of all, that case decided the question of the enumerated clause because unlike ACCA, the Sentencing Commission has made aggravated assault an enumerated offense. So it did not address the elements clause other than to say that the government concedes that it's a tarot, that the Third Circuit's a tarot case has held that conviction for reckless conduct is insufficient. And if the court looks at a tarot and goes back, that line of authority in the Third Circuit goes way, way back to like 1992. So, but what the most interesting thing that Brasby says, they discuss the New Jersey model, criminal jury instructions, and this is what they say. And I'm just going to read from this. The New Jersey model of criminal jury instructions in New Jersey practice series explain that the phrase, under the circumstances manifesting extreme indifference to the value of human life, is not part of the recklessness mens rea for aggravated assault. And then they quote the jury instruction itself. That phrase, quote, does not focus on the state of mind of the actor, but rather on the circumstances under which the jury finds that he or she acted. And in light of all the evidence, if the jury finds that the conduct resulted in a probability as opposed to a mere possibility of serious injury, then the jury may find he acted under circumstances manifesting extreme indifference. And this did not make it more clear that the recklessness mens rea of New Jersey aggravated assault for burden purposes is identical to the recklessness mens rea held not to satisfy the elements clause in Borden. So, the circumstances manifesting phrase just heightens the likelihood of injury from possible to probable. It doesn't heighten the mens rea itself. And Borden held that the against phrase, Borden said, I mean, it said flat out that the against phrase requires purposeful or knowing conduct. And, you know, as we know from Borden, you know, reckless use of force is not undertaken against anyone because all of, you know, it involves indifference and the lack of targeting and the directness that's required for what it calls the oppositional meaning of the word against. So, the fact that this indifferent, non-oppositional and undirected state of mind exists under circumstances with a heightened risk of injury doesn't make the force being used any more targeted or aimed at or consciously directed than it was in Borden. That's right. Can you go back to the somewhat threshold question of whether you have to show he was likely sentenced under the residual clause or rather merely might have been sentenced under the residual clause? This is a civil case. So, that alone, I think, makes you have to start at something of a disadvantage in winning that argument because I think under your theory, even if there's a, let's say, 80 percent chance that Mr. West's rights were not at all violated. He can still win this civil suit. It seems like an odd way to think of the kind of burden we usually put on a plaintiff. Well, I think we're conceiving of mayhave. We don't, I don't think Mr. West has to take it as far as your honor is because we're conceiving that the mayhave would only control when the evidence is sort of an equipoise as to, you know, it's like 50-50, was it the residual or was it the, and so we're, in a sense, the government says they shouldn't win the tie. We understand that that has some base appeal, but if you look at Stromberg and Griffin, once we get past the hurdles, we should be treated like any other person with a constitutional claim and under Griffin and Stromberg, when there's a general verdict, we would say this is, in a sense, a general sentencing verdict. You do treat the sentence as infected or the verdict as infected with constitutional error if you can't tell. So it's really just in that situation. That's all Mr. West needs. Of course, he doesn't really need that because we need the standard. Well, and I'm, I think maybe there's less daylight than it seemed between what the government is saying and what you're saying on that threshold question of whether it has to be likely or merely just mayhave. And I understand that putting percentages on things like this is not the best way to do it, or at least let's say it's not an ideal or perfect way to do it. But if I understood what you just said, if I think there's a 60% chance that he was not sentenced under the residual, you'd lose. Is that your theory? I know that some have interpreted the mayhave clause as such that we could win, I guess. I mean, I understand that's a harder argument to make. Let's just say that. We don't need to make it. I mean, because here, the judge himself found it was an active voice, essentially. It didn't go beyond active voice. He did not claim to remember at all, had no recollection. He was simply reading the legal tea leaves and trying to figure out, had we, you know, he didn't find that the government met the burden of showing it was more likely than not the columns clause. He just said we hadn't met the burden of it being a residual clause, so essentially he left it no further than active voice. So that situation, I mean, I think I can make an argument for that, but I really don't need to, and I understand it's a harder argument to make. Then why are we looking at the context at the time at all? Because it seems like if you look at the context of the law at the time, part of the reason you're looking at the context of the law at the time is try to get a sense of whether you're on 50-50 land or 52-48 land or 58-42 land, if I'm doing my math right. I'm trying to get those votes up to 100 every time, but it's gradations. I guess I didn't understand your argument to be, and I don't know why logically it would be, that it's only confined to the pure equipoise situation of 50-50 where it's a complete coin flip. Mayhav sounds, I mean, there may be some point at which you're far enough along the spectrum that you're not even in Mayhav land anymore. Yeah, I mean, I don't want to concede that, but I'm not making that argument. I'm just saying that here, the Mayhav test certainly makes the difference in the equipoise situation, and that's the worst we are at. I mean, we're not any worse than at equipoise because that's even better. We didn't find that we were… So one of the offenses that you're claiming was not a violent crime is when your client beat somebody over the head with a sawed-off shotgun and knocked them out, and that wasn't a violent crime. Can you give me a hypothetical under this New Jersey statute where, in common parlance, someone would say, well, you were convicted of aggravated assault, second degree, but that's not a violent crime. Give me a hypothetical. Okay. Let me look at what Justice Kagan and Borden went through, the different mindsets of purposeful, knowing, reckless, and… Yeah, but the mindset didn't involve extreme recklessness. Right. Yeah, exactly. So she said that the reckless actor, she imagined a commuter who, late to work, decides to run a red light and hits a pedestrian, and said that was not the right mindset. Now, in our hypothetical for us, it would be similar to that. We imagine the same reckless red light runner, but the circumstances of his conduct are so dangerous that it makes the risk of injury probable and not just possible, and that's the test for extreme recklessness. That's a dichotomy that I don't understand. Anything that's possible has some probability of occurring. So you're talking about what's probable and what's probable, and probable versus possible doesn't tell us when you talk about probable. It could be 10% probable. It could be 5% probable. It could be 100% probable. That is a totally meaningless dichotomy. It's in the New Jersey statute, I know, which you didn't quote, by the way. I don't understand why. The New Jersey statute itself? Oh. Yeah, I understand what you're saying. Yes. Well, I think probable, though, to me, I think probably is 51% probable. Probable cost doesn't mean it's greater than 50%. Well, they've used the word probable. I think they've also used the word substantial risk. So I understand they're hard to pin down, but they are a scale, and it goes from possible to probable, and when you get to practically certain, you're at knowing. And the point is there is space between probable and practically certain. Yeah, I don't think that goes nowhere. Well, the hypothetical I would give you would be the same red light runner that Justice Kagan imagined, only under circumstances that are much more dangerous. For example, that they know the intersection is busy with pedestrians at that time of day. Nevertheless, as they run the light, they decide to look at a text or answer a text on their phone, and someone gets hurt. That would be probable. That would rise to the level of probable, but it's not certainty. It's not probable. It's not knowing. So that space between those two things is what we think is clearly there. Can I ask a question about how Borden works out across a couple of scenarios? So if you have a situation in which it's absolutely clear that the initial sentencing was done in violation of Borden, in that there were aggravated felonies that were counted under the elements part of the statute, even though the mens rea was recklessness, and put aside extreme recklessness, let's just talk about flat recklessness, which is foreclosed by Borden. Then I think it's true that even if that's the case, a person who was convicted wouldn't have the ability to bring a second or successive 2255 petition that's grounded in what everybody concedes was an error at sentencing. I think that's right. I would like to say only if it's clear that it was only on the elements clause. Right. Well, let's just make that. I'll just give you that. So let's just say it was only on the elements clause that district court made it clear and says there's some noise in here about the residual clause. I'm not even going to get into that. I'm just grounding my sentencing. Elements clause, I know it's recklessness, but I think that's enough, and therefore ACCA is satisfied, and therefore the mandatory minimum kicks in. And then Borden comes around, and then the person, let's just suppose they've already filed a 2255 motion, then it's clear that that person can't get relief under 2255 and a second or successive motion. I think that's right. Then why is it that if that person can't get relief, even though it's clear that they should prevail on a Borden claim, that someone who has some doubt about whether it was a residual clause or not gets to come in and get the relief? Well, I mean, we aren't qualified. We don't qualify under either. We have Johnson. I mean, we have a Johnson claim to the extent he relied on residual clause. The sentence is unconstitutional, and then the only question is was he harmed by that error? And you look at can it be sustained under another clause, and under Borden it can't be. Right, so your argument is that your client would win under Borden. Am I getting this wrong? I mean, I guess what I'm asking is why does the Johnson allowance give somebody an opportunity to get relief under Borden when you couldn't get relief under Borden to begin with? We would say we're not getting relief under Borden. We have a Johnson error, and when you look to see whether we were harmed by it, you look at the law and you say, oh, they were harmed because it doesn't apply. So they don't have a Borden claim, and they're not getting relief under Borden. You're just using Borden for harmless error purposes? Yes. The only other thing we use it for, to the extent it relates back as part of the legal landscape, but we don't really need it for that purpose either. Can I follow? I wanted to follow up on the Chief Judge's question. One of the things that's somewhat disorienting about this case is your client has already served his jail time, and he was in the five-year supervised. But suppose that instead he was sentenced to 15 years to simplify, the mandatory minimum, and had only served five, and he brings the case. We would not say or analyze it in terms of whether it was likely or not likely or whatever about whether we ought to give relief. I think what we do is remand for resentencing and let the district judge sort it out. And if the district judge finds that, oh, yeah, I shouldn't have put him in the residual category. I should have put him in the elements category. The sentence remains the same. Or we could not remand and say it's harmless error. If he did put it in the residual category, that was harmless error because those crimes qualify as violent crimes anyway. But we are saying it is not a harmless error. It's harm, and we're saying this court should reverse and remand for an amended judgment. If we remanded for resentencing, the judge could resentence him using the elements clause. But he can't. Now, my hypothetical is that there's no question that both of the crimes were violent crimes. Only if they're violent. Or three of them. Right. I mean, if they're violent crimes, we lose. But they're not. So if we decide that these two beatings that your client engaged in were violent crimes, then you lose. That's right. I mean, if they qualify as violent felonies, we lose. But regardless, we wouldn't go through whether it was likely that those crimes were used under the residual clause. That drops out. We couldn't show harm, you know, if we were eligible under another clause. Okay. But then there's a question of whether we can skip directly to that if the threshold conditions for second are successive or jurisdictional. We would say you go straight to the merits that we satisfy. You go to the merits. And under the merits, we would say you apply the may have test and that we win that test. And therefore, we may have been sentenced. So we have a Johnson violation. And then the question is, can our conviction be sustained under any sentence be sustained under anything else? And it can't be. But even if you go on the preponderance standard and you say, okay, you know, you have to show it's more likely than not that you were sentenced under the residual clause. We clearly do that because of not just because of Borden, which the district court is presumed, you know, by the law correctly. Because, you know, as in Moulin, you know, subsequent developments from their statutory interpretation, all the Supreme Court did in Borden was say what the word against another always meant. And there's no reason to think Judge Leon would not construe that correctly, especially when, as they said in Moulin, the law was not inscrutable. And that's what other courts were doing at the time. And Leocal, of course, even aside, if you don't want to have Borden look back, he's presumed to know Leocal. And how all the courts were interpreting that. And frankly, even before Leocal, courts were finding you didn't use force. So why would we think by any sort of preponderance that, I mean, all signals point to the residual clause, which is the catch-all. I mean, at that point, Thomas had just come down saying that returning late to a halfway house created serious potential risk of injury. Right. This all goes to whether as a matter of historical fact, we ought to assume that the district court thought that the residual clause had to be the only clause that could apply because the district court kind of omnisciently would have understood where the law was going to go. And that, therefore, I can't rely on the elements clause. Right. That's presumed. So in a way, we've not only shown it by preponderance, we've shown it by 100%. Because he's presumed to understand the law, which is now very clear. And the law being, you know, what do these words mean? Which is a special kind of... So, you know, we're not in a situation like most Johnson defendants. And to be honest, this is why the government fights this so hard, is most defendants are trying to rely on cases like Mattis, which have not been made retroactive. And they're trying to shut that down. But that's not our situation. And so that's why we don't need to decide all this preliminary question. I have just one question. I think the gay is the source of this categorical approach to deciding whether it's a violent crime. It goes back to... You just look at the statute and you disregard the circumstances of what happened. But anyway, and the Borden case, it was only a plurality that bought into that argument. But anyway, there is some circuits, and I don't think our circuit has dealt with this yet, do something called the modified categorical approach. When the statute that is claimed to be violated states three different or two different offenses. The New Jersey statute, the way I read it, has three different offenses in it. One is the attempt. Two is purposeful wounding or harm. And then three is the extreme disregard for human life, whatever. That's three different things. So shouldn't we, if we follow that line of cases, the modified categorical approach, we take a look at the circumstances of your client's activity, whatever he was charged with, like the sawed-off shotgun, and see which one of those he falls under. And if we did that, it seems to me that anybody that hits somebody else over the head with a sawed-off shotgun is acting purposely, right? And so all this other stuff would go out the window. We wouldn't have to care about most likely, and we wouldn't have to go through the categorical interpretation. Was that a question? I definitely understood it. I would say the answer, though, is that the modified categorical does not apply here. There's a case, and mine right now does not remember which one it was. It explains very clearly that there are two offenses. It divides into two offenses. One is the attempt, and one is when you actually cause injury. And then there's two means of causing the injury. And so the modified categorical distinguishes between when you divide statutes that have separate elements, but you don't divide them when they just have different means violating the same element. And this statute is not divisible. So the recklessness is lumped in with the moral. Grammatically, that doesn't work here. If you read the New Jersey statute, it would be, I don't know, a double positive or a double negative or whatever you call it, but it just grammatically doesn't work. You have to separate the three things out. The means versus elements question can be tricky, but I think as I understand the way the analysis works, this is what means is what you mean. Okay. We'll give you some time for rebuttal. Thank you very much. We'll pass to reverse. Thank you, Mr. Hanks. Mr. Hansford. Good morning, and may it please the Court, Eric Hansford for the United States. So there are various reasons why the defendant's 2255 motion does not succeed in this case. We think that the easiest way home here is the extreme recklessness issue, that these 2255 issues are really peculiar to Johnson claims, and Johnson claims are now dwindling. So it's not necessarily something that's going to be coming up a lot going forward. And so we do think that the easiest way to resolve this case is based on the extreme recklessness issues. Just before I get there on the chief judge's question about whether these are jurisdictional requirements, the department's position is that the second or successive requirements are not jurisdictional requirements. Some circuits have kind of old, pre-ARBOT case law suggesting that these are jurisdictional requirements, but the department's position is at least that 2255H is not a jurisdictional requirement. So even to get the Court of Appeals authorization is not jurisdictional? So I think that may be jurisdictional, but we're past that. But how do you draw that line? Why would the one be jurisdictional and the other not? What's in the statute? So I believe the, so when you get to 2244, so 2244B is incorporated through 2255H, at least part of 2244. I think the best jurisdictional analysis I've seen is the Sixth Circuit's Williams case that we cite in the brief. So I think that's useful on explaining why it's not jurisdictional. I am not entirely sure what the department's position on whether the certification is jurisdictional or not. And I'm just looking at 2255H. Sure, so 2255H, it says, Second or successive motion must be certified as provided in 2244 by a panel of the appropriate Court of Appeals to contain, and as is relevant here, a new rule of constitutional law may redirect cases on collateral view. That's from court that was previously unavailable. Correct. So is that jurisdictional, that requirement? So I, How is it not? So I mean, I think there has been a certification in this case. So we're past the, there has been a prima facie certification in this case. But then, but you don't think that that's all 2255H encompasses, as I understand it. That's correct. We also think under 2244B4, there's a separate requirement that the district court then reanalyze and make sure. Is that jurisdictional? So we do not think the B4. That's what I don't understand. How can it, if 2255H is jurisdictional, at least with respect to the Court of Appeals certification. So I'm not entirely sure what the department's position on the initial, whether or not it's initially jurisdictional to get the certification. I don't, I believe our position is that it's not. That's not jurisdictional either? Or that it's not? I believe our position is that it's not, but I'm not sure about that. Then how is that? I'm happy to follow up in a 48-day kind of question. Okay, I don't want to belabor a point that maybe we're not completely sure of here. But how could that, how is that not jurisdictional? There's a separate question of whether statutory jurisdiction claims have to be addressed before the merits. We have some law that indicates that it's statutory jurisdiction. It doesn't have to be addressed before the merits, notwithstanding Steel Company, that law. I think there's been some concurring opinions that have called that into question, but that issue exists. But just on whether it's jurisdictional at all, the statute just says a second or successive motion must be certified to contain. It sounds like it's just. So, I mean, I think the question is going to be whether that's a mandatory claims processing rule or whether it's jurisdictional. And certainly the 2244-B-4, which is what we think creates the district court's obligation to independently review this, that says a second or successive claim must be dismissed by the district court. We don't think that is speaking in jurisdictional language. So the department's position is certainly that's not a jurisdictional requirement. Can I just ask you about that then? I know we're down on weeds that you don't want to be down in, but I just, I'm not, as I sit here now, I can't be certain that they're non-jurisdictional. So I just want to make sure I understand the case's thinking on this. On 2244-B-4, I'm not understanding what that has to do with a 2255 case as opposed to a 2254 case. Because how is it that 2244-B-4 in a 2255 case says that the district court has this second layer of assurance that the second or successive precondition is satisfied? And by the way, none of this is to say that you don't ultimately, one way or the other, whether you ultimately win. It's the route by which one would go through the analysis. And on that, that seems like a big skip. That 2255-H definitely deals with the threshold certification by the Court of Appeals that there has to be a premium of foster care. Everybody agrees with that. Then the question is, well, what comes after that? And it definitely comes, this second stage definitely comes after the 2254 case, but we're talking about a 2255 case. What is it? Yes, so the 2255-B-4 does not explicitly cross-reference 2254 in the way that B-1 or B-2 do. And so every circuit, including the Mayhav circuits, has found that there are two gates that a second or successive 2255 has to pass through, the second gate being that 2244-B-4. Every circuit has. Right, but why is every circuit right about that? They may be, but I don't get it. Textually, where is that second stage coming from in a 2255 case? So, I mean, I think the question is what, when 2255-H is cross-referencing 2244, what is brought in by that? Because the 2255-H language, it's not exactly identical to the 2244 language. So in doing that cross-reference, it's pulling in something, and it's not entirely clear what the scope of that is. I think in understanding why there has to be a second gate, why the district court has to reanalyze it, it's useful to look at 2255-H-1 for the newly discovered evidence. Under that provision, you get a second or successive petition if you establish newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient by clear and convincing evidence to find that no reasonable fact finder would have found the moving guilt. So if all you have to do, that clear and convincing evidence, especially with that whole provision, that is contemplating some sort of standard of proof that you are ultimately put to. And the prima facie certification that happens before the circuit just to get the filing of the 2255-H, that is not engaging in that sort of analysis. There's no evidence. There's no evidence at all before the circuit. I don't doubt for a second that it would make a lot of sense if there were this second stage. It seems like, functionally, it almost seems like that would be maybe the only sensible way to construct the regime, but I don't see it. I don't see where, even in the H-1 situation, what statutorily is bringing, effectively what you're doing is bringing in 2244-B to A and B into a 2255 case, even though those provisions specifically talk about 2254, not 2255. That's effectively what's happening, because then those are the second stage review in a 2254 case. And the question is, where is that second stage coming from in a 2255 case as a textual matter? How do you get the textual? Sure, sure. So, I mean, I think that when you look at statutory interpretation, you're looking at context. So I think you have to look at the H-1 language. And I think if you are understanding certification to just mean all we have to do is this prima facie case before the circuit, H-1 just makes no sense. It makes no sense to be talking about clear and convincing evidence, to be looking at what sort of evidence is going to be established, because that is not ever required in the 2255, right? You don't have to, in order to prevail on a 2255 established by clear and convincing evidence that no reasonable fact finder would have found you not guilty based on newly discovered evidence. Instead, even for newly discovered evidence, your 2255 is going to be based on another claim. It's going to be a Brady claim or something along those lines. And that's going to be the standard 2255 preponderance standard. So I think the fact that H-1 is referencing the clear and convincing evidence is the clearest textual signal that there is an evidentiary burden that a defendant has to meet beyond just the prima facie case. And then there's just a larger structural point, which is that Supreme Court and other courts have recognized 2255H, the second or successive petition, is supposed to make it significantly more difficult to establish a 2255 petition. And if you are just reading in isolation that word certified as just this fairly easy prima facie case, you're not really doing a lot of work with that. I mean, all this ultimately goes to is that even if I agreed with you that the right way to look at the entitlement to relief ultimately is more likely than not, that the movement has to show more like that. Even if I agreed with you on that, all this technical debate goes to is, do I do that at the threshold stage of deciding whether they've gotten through the second or successive gateway? Or do I do it at the merits to decide whether they actually succeed on a Johnson claim? That's right. And just to flag here, this is in part why we think it's easier to resolve all of this on extreme recklessness, because, you know. If we can get there on the assumption that it's non-jurisdictional. Right, right. But I think no one is saying that. I think any argument that the second gate would be jurisdictional is would be very. What is his status now? He served his 18 years or whatever it was. And he was what, three years into supervisory release? I don't remember exactly how far, but yes, he has been revoked. That was revoked. Right. And so he was put back in jail for what? What was it? What was what was the cause of his violation of the supervisory lease? I, I, it was, I believe, a new criminal conviction, but I don't remember the details of it. There is a separate appeal involving his revocation. I'm just wondering if in this separate appeal or whatever, was he given a concurrent sentence? The two years of the supervisory lease that he didn't fulfill was a concurrent sentence with whatever the crime was that he committed. I don't recall. I would assume. Isn't that rather important? Well, you know, what relief could we give? There are two questions that are involved there. Number one is what relief we could give if he's serving concurrent sentences or maybe he's already served the supervisory lease. And number two, if if the argument is. And I've asked defense counsel this. If the argument is that you have to excuse his violation of supervisory lease because that he would not have been sentenced to five years or 15 years minimum and five years. If if the if he were sentenced, miss sentenced under the elements clause. And that raises an interesting question. You know, an injunction actions. If you violate an injunction, you can't defend on the basis that the injunction was unconstitutional. The Supreme Court's held that a number of times. You have to, first of all, get that injunction lifted. It seems to me by a parallel by parallel reasoning, if you claim you shouldn't be under supervisory lease, you just don't go out and violate it. What you have to do is get it lifted first. So, I mean, I understand the analogy and the abstract. I'm not aware of any cases that that kind of make that that sort of analysis. But I, I do think this court ultimately doesn't have to engage with that because the extreme recklessness is clearly going to qualify as a crime of violence under court. Well, we wouldn't if there's no relief we can get, we wouldn't get to that question. I guess I'm just not aware of any cases holding that. So I'm not sure that's that's the easiest way to resolve. I'm not sure that there are any cases going the other way either. I, I, I'm just not aware of any case law on that. But in terms of in terms of the extreme recklessness issue, I think that both textually and contextually, which are the two key points that Gordon emphasizes the extreme recklessness looks very different from ordinary recklessness. So contextually, extreme recklessness is most often used in murder, in second degree murder, depraved heart murder. That's mainly where extreme recklessness is confined. This doesn't say extreme recklessness. So it says extreme disregard for human life. Yes, but that is the classic formulation of extreme recklessness. That language comes straight from the model, you know, the New Jersey statutory language. And so as Braisey and the Third Circuit recently recognized, this is this is kind of classic stream recklessness language. Do you agree there are three crimes laid out and that's in the both in the second degree and third degree aggravated assault? So let's go through them. One is attempt. Sure. Right. Right. Two is purposeful. Purposeful, you know, arming another. Right. So I think three is is the causing injury, such injury, which is serious or substantial in disregard of human life. So I think in applying the categorical approach and what the Braisey Third Circuit did with this statute is the attempt is a separate crime because that's kind of actually separately defined. But the or caused injury purposely or under circumstances manifesting extreme indifference to the value of human life recklessly. Oh, no, no, no. Finish the sentence. Finish. Cause such injury. Cause such injury. So you cause it in the third clause. You cause it in the second clause. You attempt to cause it in the first. So I think the modified categorical approach, it is hard to apply. It comes from the Supreme Court. So it is something that applies here. But I think under the modified categorical approach, we would say those are two, two crimes, just the attempt and the actual causing. And it's alternative means committing the same crime, causing injury as opposed to alternative crimes, which has to do with textually how it's applied and things like that. The other thing to flag with the modified categorical approach, sadly, that doesn't get us to looking at what was his crime. The crime that I mentioned with beating somebody over the head with a sort of shotgun. But the other crime was when he was in prison. Right. And what what were the circumstances of that? It was eating a fellow inmate, but I don't I don't remember the details of the circumstances there in the sentencing report. But in terms of it's in the pre-sentence report. Yes, I think it's paragraphs. I think it's not in the appendix. I don't think it's in the appendix. Do you have a copy of it? I mean, we could we could certainly submit a copy if that would be. Yes. OK, I'd like to see. So in terms of why under important extreme recklessness does qualify, murder is kind of the classic example of extreme recklessness and extreme recklessness is not strewn throughout. Unlike ordinary recklessness, striving and giving second degree murder is what your second degree murder. Yeah. Yeah. Yeah. So conceptually, yes. Extreme recklessness. This goes to harmless error. Is that what you're is that the way the analysis would go that even if there's Johnson here and even if that Johnson here is actionable? It doesn't matter because the same predicate offense is still qualified under the. I think that's the cleanest way to understand it. I think circuits have done a variety of things. What's the government's view on the right? So I think I think seeing it as harmlessness is the cleanest way to do it. Yes. I think ultimately that that doesn't especially it doesn't really change the analysis. The legal questions that we don't have to worry about bears the burden on homelessness here. There is there a difference between harmless error analysis and constitutional error in the analysis? Are you familiar with Chapman? Yes. What's the difference in the formulation between the two? This is this would be a constitutional. So because of Johnson. Right. But we're on we're on collateral. And so we're applying the breadth standard of harmlessness. So we are not we are not applying the harmless beyond a reasonable doubt that would apply on direct review. But that does not apply on collateral. Is your burden to show homelessness? It is our burden, but it doesn't really matter because it's a legal question. So can I ask the following hypothetical? So suppose you have a situation in which the district judge says. I see that I could count these offenses either under the residual clause or under the elements. I could do either. I'm not going to do the elements clause. I just I don't feel comfortable doing that. These offenses, I'm not sure they fit. It's not going to do that. I'm going to go under the residual clause. I just want to make it clear. That's what I'm doing. Sure. And then the same 2255 motion is brought. Would we do harmless error analysis? That's where. Yes. So I think you would say. The defendant has established that his sentence under 2255 a was imposed in violation of the Constitution. It was imposed based on a residual clause that is unconstitutional. So there the 2255 a showing, but it doesn't matter. It's harmless because the defendant was still subject to the exact same even if just subject to. Well, no, the defendant also was it as a matter of law, his predicate convictions are violent felonies. And therefore, even if we know as a matter of historical fact that the district judge would not have used the elements clause. That's correct. Yes. Yes. That's how harmless error analysis applies in the 2255 stage. Even if the district judge says I'm not going to go under the clause. I mean, then I mean, then on a on a direct appeal, have the district court said that and declined to rely on the residual clause? Then I think you'd likely see a government appeal in that or potentially see a government appeal in that case. So that's why you're looking at what the you're looking at, whether or not the defendant qualifies as a violent. Has qualifying violent felonies as opposed to trying to dissect what the district court would have said in harmless error. At the 2255 stage, you are trying to figure out what the district court did in this specific. But for harmless purposes, we don't look at what the district court said. Correct. And we also don't look at we do look at the state of the law. Now. You look at that's what we're looking at for the harmless error. So the defendant, you know, and it showed that a defendant established that he was improperly sentenced under the residual clause. We say, yes, it was improperly sentenced at that time, but that doesn't matter because he was subject to the exact same enhancements on another legally or legally. I do think it's not that not just that he was subject to, because it has to be more than that prevail on. Right. Just the fact that he was he qualified. I mean, these are all legal. They definitely apply. It has to be that they definitely. Well, I mean, I have hundreds, but they're all legal. So I don't think we have to be ISEC standard. The question is just post-mortem, does extreme recklessness qualify under the. You can go off into the blue yonder on this. Is it is this a subjective inquiry? And it reminds me of the beginning of a very famous sort of appeals case. It said the principal issue in this case is what the district court would have thought on an issue about which it never thought. Yeah, I mean, I think that is I think that is potentially what happened here. Just on the twenty two fifty five of the three alternative arguments timeliness, twenty two fifty five age and the merits. I think the cleanest way of seeing that preponderance standard is the appropriate standard. Twenty two fifty five a what we're calling the merits of the twenty two fifty five, which is the language. And that is a prisoner in custody has to establish that the sentence was imposed in violation of the Constitution. That clearly adopts a preponderance standard. It's not a may have standard. It doesn't work to say he may have been sentenced under the residual clause and therefore a sentence was imposed in violation of the Constitution. But you still don't think that's the easiest way to resolve the case. You think the easiest way to resolve the case actually is to even assume that went away and go to extreme. That's correct. And all five circuits who have confronted the extreme recklessness issue have agreed that extreme recklessness does satisfy it. So in part, that circuit consensus is helpful here. I get that there's not a circuit split on this Gordon question yet, but I mean, this is. And I mean, you seem to be very confident Supreme Court is going to agree with you. And I just don't know. And to say, you know, I wouldn't bet my house on what the Supreme Court will do with a question, you know, full stop. So I'm not sure why the easiest and easiest in the sense of we can feel the we can we can feel the most comfort and certainty that we're getting it right. Isn't to do it on the must prove likelihood versus nearly may not even get into whether it's jurisdictional or not. As we could say, I think even under Steelco, if it's jurisdictional and likelihood is required, there's no jurisdiction. It's not jurisdictional. Likelihood is still required. He loses on the merits. It seems like we could there are some, you know, so many interesting questions in this case. But if I think that that is the easiest question, it must be likely not may. Then can I assume away almost every other question in the case? Yes, I think you can. The reason we think the extreme recklessness is the easier way, which is, I agree, is rarely the easiest way to resolve things. But unlike the extreme recklessness issue where there is certain consensus, there is disagreement in the circuits about all these 2255 issues. So I think that's that's the reason we're pointing there. The other thing I'd say on the extreme recklessness is the. The Supreme Court has consistently in APA look at the consequences of the decision as emphasized as opposed to capture crimes like murder. Then Judge Alito opinion and has. So in in the quarrels of Indian in 2019, in the stooping opinion in 2017, the Supreme Court is looking at common ways that crimes, common law crimes of violence are defined. So Stokely, it's robbery under the elements clause and is interpreting the elements clause in a way to make sure you're not excluding these kind of classic crimes of violence. And so extreme recklessness, because that is largely confined to second degree, depraved murder, that seems to very much fall within the, the, the heartland of where what should be a crime of violence. Even in the upside down world of saying murder is not a crime of violence. One day, one day, we'll find out if there are no questions. We'd ask the support to go for. Thank you, Mr. Hansford. This will give you the three minutes that you asked for. Just clarify for judge Randolph. So, the status is that he received, we were serving five years supervisor release. He was revoked for, for the technical by no, no new criminal conviction. He was given what was the technical was not reporting or something. He was one. One thing I mean, I know for sure he was living with his girlfriend instead of with his cousin where he was supposed to be living. I can't remember if there was a pill involved. I don't recall. I guess the judge found by preponderance. Are you handling his other our offices? This point, but the point is that he got after the 13 months, the judge took 60 months. How you do it 60 months and subtracted the 13 gave him, you know, and so he has to do 47 more. And he only started that in December. So, he's got like almost four years. Well, what's the answer to the question that I tried to post, which is that if he was on supervisory lease and violated that. That violation is that violation white clean if you win this case. I'm not sure it is. Well, it can't really be wiped clean. He served time. I do think his supervised releases remaining supervised releases. It's like an injunction, you know, the violated. You don't have a defense that was unconstitutional to begin with. You've got to get the supervisory lease vacated. Now, you can do whatever you please, but you can't go out and violate it. Yeah, I have to think about how procedurally it's going to work, but I mean, that we do have an appeal from that 47 month remainder. And it was very clear that judge Leon got to that by taking our 60 months, which was wrong. And subtracting 13, because that's how the statute works and this all flows from our conviction. So, that's that then I just discovered evidence point. I just don't really understand how the government's reading it when the statute says newly discovered evidence that is proven. It's just saying hypothesize that when we get to the merits. It's going to be valid just telling you that it has to be proven at the procedural stage. That's that's that. You know, just on this term, extreme recklessness, I just want to be clear that. Raspi explains that really and they, I think a lot of the courts call it extreme indifference recklessness, which is a term of art. It's just like, there's more recklessness. There is, there's just recklessness under these circumstances that make it more extremely different. I also want to say that, you know, the government, these cases, the government's relying, nobody is saying much more than that. This is that extreme indifference. Recklessness is closer knowledge. How is that enough under boarding? And in some of the cases, don't even deal with the fact that there's not an aiming or directing. They just say, they look at the context and they say, well, these are really bad crimes. We don't want to blur what's they jump way past all the things that Justice Kagan said, like, over and over. So clearly, they're just not fine boarding. I mean, if under your argument, second degree, the classic second degree murder would not count. If it's got, right, because it is, I mean, as Raspi makes clear, and, you know, it's just recklessness, but under special circumstances. And I just want to say that one more thing, which is that this finally is on the big picture of EDPA. You know, there seems to be this feeling that somehow our interpretation of EDPA is going to swing the doors wide open, and I just want to be clear and like undermine finality. But under our interpretation, almost nobody can bring a second successive petition. There is this little narrow window. It's for this, like, people who lightning strikes them because the Supreme Court does this incredibly rare thing, making a new rule and then ruling that it's retroactive. I mean, this never happens. If you fall in that category, yes, EDPA is easy to get through, but for everybody else, it's almost impossible. So, I mean, that's the way this thing is set up, and it's not at all odd. We would say that Congress would put this court in charge of the procedural question and leave the merits and the timeliness to the district court. So, with that, we would ask that the sentence be reversed, the case be reversed, and with an order to amend the sentence to no more than 10 years, three years. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Walker, Randolph